UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BIRCH FAMILY SERVICES, INC.,          :
           :
          Plaintiff,     :
           :      **OPINION & ORDER**
     -against-       :      19-cv-03301 (DLI)(PK)
           :
JACK WLODY and CORINNE WLODY,    :
           :
          Defendants.   :
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On June 4, 2019, Birch Family Services, Inc. ("Plaintiff") commenced this action against Jack Wlody ("Jack") and Corinne Wlody ("Corinne") (collectively, "Defendants"), alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(19). *See generally*, Complaint ("Compl."), Dkt. Entry No. 1. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See*, Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Mot."), Dkt. Entry No. 22. Plaintiff opposed the motion. *See*, Plf.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Opp'n"), Dkt. Entry No. 24-31. Defendants replied. *See*, Defs.' Rep. Mem. of Law in Supp. of Mot. for Summ. J. ("Rep."), Dkt. Entry No. 25-3. For the reasons set forth below, Defendants' motion is granted and this action is dismissed in its entirety.

## BACKGROUND

The facts recounted below are taken from Defendants' Rule 56.1 Statement ("Defs.' 56.1," Dkt. Entry No. 23), Plaintiff's Response to Defendants' Rule 56.1 Statement ("Plf.'s Resp. to Defs.' 56.1," Dkt. Entry No. 24-29, at 8-14), Plaintiff's Rule 56.1 Statement ("Plf.'s 56.1," Dkt. Entry No. 24-30), and Defendants' Response to Plaintiff's Rule 56.1 Statement ("Defs.' Resp. to Plf.'s 56.1, Dkt. Entry No. 25-2). The facts are undisputed unless otherwise stated.

The Court has viewed the facts in the light most favorable to the nonmoving Plaintiff, considered only facts recited by the parties in their respective Rule 56.1 statements and responses that are established by admissible evidence, and disregarded conclusory allegations and legal arguments contained therein.  *See*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion.") (citations omitted).

## I.     The Parties and the Birch Home Development

Plaintiff is an organization that provides homes and assisted living services in Brooklyn, Queens and Manhattan for individuals with autism and developmental disabilities.  Plf.'s 56.1 ¶ 3. State and city oversight programs regulate Plaintiff's homes, while regulators, residents' families and Plaintiff's quality assurance team review the quality of care provided to the residents.  *Id.* ¶ 4.

Defendants are a married couple that have lived together in a residential property located at 137-35 80th Street, Howard Beach, New York 11414 (the "Wlody Home") since 2002.  Plf.'s Resp. to Defs.' 56.1 ¶¶ 1-2.  The Wlody Home is one half of a two-family house owned by Jack's mother, Trudy Wlody.  *Id.* ¶ 3; Plf.'s 56.1 ¶ 11.  In 2013, Plaintiff purchased the other half of the house located at 137-31 80th Street, Howard Beach, New York, 11414 (the "Birch Home") and converted the Birch Home to a community residence for six individuals with developmental disabilities.  Plf.'s 56.1 ¶ 6; Plf.'s Resp. to Defs.' 56.1 ¶ 4.  Plaintiff has operated the Birch Home since 2014 and its staff provides 24/7 support to the residents in carrying out their daily activities. Plf.'s 56.1 ¶¶ 7, 10.  The staff is predominately African-American.  *Id.* ¶ 10.

## II.    Disputes Regarding Plaintiff's Use of the Birch Home

Defendants initially did not object to the conversion of the Birch Home to a residential facility for adults with developmental disabilities.  Plf.'s Resp. to Defs.' 56.1 ¶ 5.  However, the

2

relationship between the parties deteriorated quickly and Defendants want the facility closed. Plf.'s 56.1 ¶ 44. Two of the residents suffer from behavioral problems and Plaintiff's staff is not trained to work with them. Plf.'s Resp. to Defs.' 56.1 ¶ 6. The women are violent and disruptive. *Id.* ¶ 7. One of the women spit at and punched a police officer, threw bleach in a staff member's face, pulled the fire alarm and assaulted the other Birch Home residents and staff. *Id.* On September 26, 2014, Defendants informed Plaintiff that one of the women threatened to kill Corinne. *Id.* ¶ 8. Plaintiff responded that it could do nothing about her threat. *Id.*

Defendants also experienced problems with Plaintiff's staff. Plaintiff's staff would block Defendants' driveway when they parked their cars, hold parties and play loud music at all hours of the night and leave garbage on the Defendants' lawn. *See*, Affidavit of Corinne Wlody ("Corinne Aff."), Dkt. Entry No. 21-2, at ¶ 7. Defendants heard Plaintiff's staff screaming and berating the residents. *Id.* Moreover, the staff did not supervise the residents properly allowing them to wander throughout the neighborhood or sit unattended in running cars. *Id.* ¶ 8. Defendants reported these ongoing problems to Plaintiff, but there was no improvement. Plf.'s Resp. to Defs.' 56.1 ¶¶ 9-10. In September 2014, Defendants began to videotape and photograph Plaintiff's staff and residents to document these issues. *Id.* ¶ 10. Defendants took the videos and photographs from their balcony, driveway and backyard and captured conduct that was visible from the Wlody Home or the street. *See*, Affidavit of Jack Wlody ("Jack Aff."), Dkt. Entry No. 21-3, at ¶ 7; Affidavit of Cheryl Martin-Walker, ("Cheryl Aff."), Dkt. Entry No. 24-5, at ¶ 9.

Defendants have been videotaping the Birch Home almost daily since September 18, 2014 and have taken thousands of videotapes and photographs of Plaintiff's staff and residents. Plf.'s 56.1 ¶¶ 34-36. Defendants kept a written log of the videos documenting the date, time and issues they observed at the Birch Home. *See*, Ex. G to Affidavit of Robert Schonfeld ("Schonfeld Aff."),

Dkt. Entry No. 24-15.  Defendants recorded in the log, among other issues, noise complaints, littering, alarms, idle running vehicles, double-parked cars, and cars blocking Defendants' driveway.  *Id.*  Defendants provided the videotapes to Plaintiff as evidence of their complaints. Plf.'s Resp. to Defs.' 56.1 ¶ 12.

In 2018 and 2019, Defendants contacted municipal authorities, including the New York City Police Department and the New York City Sanitation Department, to report Plaintiff's littering, noise, idle running vehicles and cars blocking Defendants' driveway.  Plf.'s 56.1 ¶ 42-43; Ex. R to Schonfeld Aff., Dkt. Entry No. 24-26; Cheryl Aff. ¶¶ 16-21.  In October 2018, Defendants also emailed their state senator, the borough president, and the state attorney general to report that Plaintiff's staff was abusing and neglecting the Birch Home residents and requested their help to get the Birch Home "shut down[.]"  Plf.'s 56.1 ¶ 44; Ex. S to Schonfeld Aff., Dkt. Entry No. 24-27, at 2-4.  Defendants provided their videotapes to the New York Justice Center, which investigates allegations of abuse against disabled individuals.  Plf.'s Resp. to Defs.' 56.1 ¶ 12.

## III.   Defendants' Comments Regarding Plaintiff's Staff and Residents

Plaintiff alleges that Defendants harbor discriminatory animus against Plaintiff's African-American staff and disabled residents.  Plaintiff relies on a number of comments made by Defendants over roughly a three-and-a-half-year period from September 2014 through February 2018.  In September 2014, Corinne sent text messages to Plaintiff stating that "your staff are not civilized[,]" "you are ruining our neighborhood[,]" and "it is as though we have been moved into a psych ward of a hospital."  Plf.'s 56.1 ¶¶ 22-23.  In November 2014, Corinne texted Plaintiff that "[w]e feel like we live next to an asylum[,]" "[f]rom our perspective[] you have NOT BLENDED into the neighborhood . . . you are trying to take over[,]" "our neighborhood is not going to accept

your way of blending[,]" and "[y]ou are destroying [our] neighborhood[.]" *Id.* ¶¶ 24-26.

Corinne also expressed her frustration with the Birch Home in emails to Plaintiff. In May 2015, Corinne stated that "this is a residential neighborhood[] and you are a business." *Id.* ¶ 27. In October 2015, Corinne added, "we shouldn't have to hear loud institutional sounds in our residential neighborhood." *Id.* ¶ 29. In February 2016, Corinne requested that Plaintiff change its staff because "they have attitudes[.]" *Id.* ¶ 30. In February 2017, Corinne complained that she felt unsafe because "people act thuggy[.]" *Id.* ¶ 31. Defendants also referred to unnamed staff members in 2018 entries from their video log as "hyena[,]" "thug" and "hejab [sic]." *Id.* ¶ 32.

The parties dispute whether Jack made discriminatory comments about Plaintiff's African-American staff. In November 2014, staff member Laury King heard Jack call staff member Wyking Kennard a "fucking nigger[.]" *Id.* ¶ 14; Deposition of Laury King, Ex. B to Schonfeld Aff., Dkt. Entry No. 24-10, at 24-25, 35. In November 2015, Jack sprayed staff member Stephen Agiamoh with a hose. Plf.'s 56.1 ¶ 16. In February 2018, Jack shouted at staff member Amanda Findlay, "[w]hose fucking car is this? You niggers don't learn." Affidavit of Amanda Findlay, Dkt. Entry No. 24-2 at ¶ 6. Jack denies these incidents. Defs.' Resp. to Plf.'s 56.1 ¶¶ 14, 16, 18.[1]

## IV.   The Instant Action

Plaintiff brings this action on behalf of its African-American staff and the disabled residents in the Birch Home, alleging that Defendants' videotaping and photographing are motivated by their animus towards these groups. Compl. ¶¶ 66, 74. Plaintiff claims that Defendants have violated its rights under Section 3617 of the FHA and Section 8-107(19) of NYCHRL to be free from threats, intimidation and interference in its use of the Birch Home. *Id.*

---

[1] The Court notes that Jack's statements are not inadmissible hearsay. Ms. King and Ms. Findlay had personal knowledge of the statements and Plaintiff offers Jack's statements as evidence of his animus, not for the truth of their content. *See*, *West v. Kindred Nursing Ctrs., Ltd. P'ship*, 2007 WL 2317398, at *10 (E.D. TN Aug. 9, 2007).

¶¶ 7, 70, 75.  Specifically, Plaintiff's staff and residents have a right to work and live in the Birch Home free from discrimination.  *Id.*

As a threshold matter, Defendants claim Plaintiff lacks standing to bring this action on behalf of its staff and residents and that at least two incidents complained of fall outside the statute of limitations.  *See*, Answer ("Ans."), Dkt. Entry No. 8 at ¶ 28;  Mot. at 6, 15; Rep. 6-7, 10-11.  In addition, Defendants contend that they videotaped and photographed Plaintiff's staff and residents and submitted complaints to municipal authorities solely to document wrongful conduct in the Birch Home, not for discriminatory reasons.  Mot. at 11, 13.  Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  *See*, Mot.  Plaintiff opposed the motion.  *See*, Opp'n.  Defendants replied.  *See*, Rep.

## LEGAL STANDARDS

### I.  Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

To determine whether an issue is genuine, "[t]he inferences to be drawn from the

underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).  Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted).  The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256.  The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted).  "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

Federal Rule of Civil Procedure 56 provides that, in moving for summary judgment or responding to such a motion, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" *Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 219 (2d Cir. 2004) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988)). If assertions in an affidavit "are not based upon the affiant's personal knowledge, contain inadmissible hearsay, or make generalized and conclusory statements," a court may strike those portions of the filing, or decline to consider those portions that are not based on personal knowledge or are otherwise inadmissible. *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp.2d 157, 163 (E.D.N.Y. 2012) (citations omitted). While the Court need consider only the materials cited by the parties, it may consider any other materials in the record in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).

## II.   <u>Article III Standing</u>

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  To demonstrate injury in fact, a plaintiff must show the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan* at 560 (internal quotation marks omitted).  As the Supreme Court has clarified, injury to a legal interest must be "concrete" as well as "particularized" to satisfy the injury-in-fact element of standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (stating that requirements are distinct and each must be satisfied).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (internal quotation marks omitted) (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'").

"The FHA confers standing to challenge [] discriminatory [housing] practices on any 'aggrieved person,' 42 U.S.C. § 3613(a)(1)(A).  That term is defined to include any person -- who [] claims to have been injured by a discriminatory housing practice[.]" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995) (citing 42 U.S.C. § 3602(i)).  "This definition requires only that a private plaintiff allege 'injury in fact' within the meaning of Article III of the Constitution, that is . . . distinct and palpable injuries that are fairly traceable to [defendants'] actions." *Id.* (internal quotation marks and citation omitted).  "An injury need not be economic or tangible [] to confer standing." *Id.*  "The FHA's conferral of standing is extremely broad" and includes standing to bring suit for "injuries resulting from having aided or encouraged any other person in the exercise or enjoyment of . . . a right protected by the FHA." *Jenkins v. Eaton*, 2009 WL 811592, at *7 (E.D.N.Y. Mar. 27, 2009) (internal quotation marks and citation omitted).

## III.   The Fair Housing Act

Congress enacted the FHA "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601.  The language of the FHA is "broad and

inclusive." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); *See also*, *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 385 (3d Cir. 2011) ("The FHA is a broadly remedial statute designed to prevent and remedy invidious discrimination[.]"); *Ohana v. 180 Prospect Place Realty Corp.*, 996 F. Supp. 238, 240 (E.D.N.Y. 1998) ("[T]he provisions of the FHA are to be construed broadly.") (citing *Trafficante*, 409 U.S. at 211-12).

Section 3617, the relevant provision in this action, provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided and or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Sections 3604, 3605 and 3606 prohibit discrimination in the sale or rental of housing, residential real estate related transactions and the provision of brokerage services, respectively. "Section 3617 prohibits the interference with the exercise of Fair Housing rights only as enumerated in these referenced sections, which define the substantive violations of the Act." *Frazier v. Rominger*, 27 F.3d 828, 834 (2d Cir. 1994). Plaintiff's claims do not concern any rights granted or protected by Sections 3603-3606. However, it is not clear that a nexus between a Section 3617 claim and the sections enumerated therein in necessary to support a Section 3617 claim and the Second Circuit has not addressed this issue. *Ohana*, 996 F. Supp. at 240-41; *United States v. Weisz*, 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996).

Several district courts within and outside of the Second Circuit have held that Section 3617 can serve as a separate and independent basis for an FHA claim, even if there is no predicate for liability under Sections 3603-3606. *See*, *Lachira v. Sutton*, 2007 WL 1346913, at *17 (D. CT May 7, 2007) (collecting cases); *Ohana*, 996 F. Supp. at 241-43 (collecting cases); *Marks v. BLDG Mgmt. Co., Inc.*, 2002 WL 764473, at *10 (S.D.N.Y. Apr. 26, 2002) ("[R]eading § 3617 as

dependent on a violation of the enumerated sections would render § 3617 superfluous.") (citation omitted).  Moreover, a regulation promulgated under the FHA provides that Section 3617 protects individuals from discrimination in the mere enjoyment of their dwelling.  *See*, 24 C.F.R. § 100.400(c)(2) (stating that "[t]hreatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons" is prohibited by Section 3617).  This plausible construction of the statute is consistent with the FHA's broad remedial purpose and is entitled to deference.  *Ohana*, 996 F. Supp. at 242 (citing, *inter alia*, *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984)).  Accordingly, Plaintiff may assert a Section 3617 claim without a predicate for liability under Sections 3603-3606.

To prevail on a Section 3617 claim, a plaintiff must show that: "(1) she is a member of a protected class under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) [d]efendants were motivated in part by an intent to discriminate, and (4) [d]efendants coerced, threatened, intimidated or interfered with [p]laintiff on account of her protected activity under the FHA."  *Lachira*, 2007 WL 1346913, at *18 (citing *East-Miller v. Lake Cnty. Highway Dept.*, 421 F.3d 558, 563 (7th Cir. 2005)).

The Court reviews FHA discrimination claims under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See*, *Francis v. Kings Park Manor, Inc.*, 2021 WL 1137441, at *3 (2d Cir. Mar. 25, 2021); *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (citation omitted).  Once Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their conduct.  *McDonnell Douglas Corp*, 411 U.S. at 802-03.  "This burden is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 143 (2000) (internal quotation marks and citation omitted).

If Defendants satisfy their burden, the burden shifts back to Plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citation omitted). "The ultimate burden of persuading the trier of fact that the defendant[s] intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citations omitted). "Summary judgment is appropriate if no reasonable jury could find that the defendant[s'] actions were motivated by discrimination." *Mitchell*, 350 F.3d at 47 (citing *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000)).

## III.   New York City Human Rights Law

"NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA." *Haber v. ASN 50th St. LLC*, 847 F. Supp.2d 578, 588 (S.D.N.Y. 2012) (applying *McDonnell Douglas* test to NYCHRL housing discrimination claims).   Under NYCHRL, "it shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of such person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section." NYCHRL § 8-107(19).   "Threats are required to state a claim for violation of [] § 8-107(19)." *Garcia v. Comprehensive Ctr., LLC*, 2018 WL 3918180, at *5 (S.D.N.Y. Aug. 16, 2018) (citations omitted).   A "threat" is a "denunciation to a person of ill to befall him [or her]" or an "indication of impending danger or harm." *United States v. Davila*, 461 F.3d 298, 302 (2d Cir. 2006).   Plaintiff claims that NYCHRL prohibits intimidation, threats or interference with "the rights of persons to enjoy their premises" but fails to identify where this right is granted or protected in Section 8-107

and does not cite to any case law to support this assertion.  Compl. ¶¶ 61, 75.

## DISCUSSION

### I.   Article III Standing

Plaintiff asserts that it has standing to file this action under the FHA because Defendants have threatened, intimidated and discriminated against its staff and residents and Defendants are seeking to close the Birch Home.  Compl. ¶ 74.  Defendants deny that Plaintiff has standing but do not proffer any arguments in support in this assertion.  Ans. ¶ 28.

The Second Circuit has found that operators of group homes for the disabled may assert FHA discrimination claims on behalf of their residents.  *See*, *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574 n.6 (2d Cir. 2003) (owner and operator of group homes for recovering alcoholics and drug addicts had standing to challenge regulation that allegedly discriminated against its residents); *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 46 n.2 (2d Cir. 2002) (organization that provided housing services to disabled persons had standing to bring discrimination claims on behalf of its residents).

Plaintiff is an "aggrieved person" within the meaning of the FHA as it claims to be the victim of a discriminatory housing practice and Defendants are seeking to close its facility.  42 U.S.C. § 3613(a)(1)(A).  The FHA also protects any person who has "aided and or encouraged" any other person in "the exercise or enjoyment of, any right granted or protected" by the statute. 42 U.S.C. § 3617.  Plaintiff's staff provides assisted living services to the disabled residents.  It thus aids and encourages their use and enjoyment of the Birch Home.  The Court finds that, as a provider of housing and services to disabled persons, Plaintiff has standing to assert a Section 3617 discrimination claim on behalf of its staff and residents.  Accordingly, the Court has subject matter jurisdiction over Plaintiff's FHA claim and supplemental jurisdiction over its NYCHRL claim.

## II.     <u>Statute of Limitations</u>

Claims brought under the FHA are subject to a two-year statute of limitations.  *See*, 42 U.S.C. 3613(a)(1)(A) ("An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice[.]").  Plaintiff filed this action on June 4, 2019.  *See*, Compl.  Therefore, the relevant limitations period for the FHA claim is June 4, 2017 through June 4, 2019.

Defendants argue that two of the discriminatory incidents that Plaintiff has alleged fall outside of the statute of limitations and should not be considered.  *See*, Mot. at 6, 15; Rep. 6-7, 10-11.  The first is Jack's alleged statement to Mr. Kennard that he was a "fucking nigger" in November 2014.  Plf.'s 56.1 ¶ 14.  The second is Jack's alleged spraying of Mr. Agiamoh with a hose in November 2015.  *Id.* ¶ 16.  Plaintiff counters that Defendants' argument misconstrues its Complaint and should be rejected.  Specifically, Plaintiff cites to these two incidents solely to demonstrate Jack's animus against its African-American staff and not as independent examples of FHA violations.  Opp'n at 18-20.  Defendants did not respond to Plaintiff's argument.

Given that Plaintiff does not claim that these two incidents amount to "discriminatory housing practice[s]" under the FHA, it is immaterial that they occurred outside the limitations period.  42 U.S.C. 3613(a)(1)(A).  Therefore, the Court may consider them as admissible evidence of Jack's purported animus when ruling on the instant motion.  *See*, footnote 1, *supra*.

## III.     <u>McDonnell Douglas Framework</u>

### (1)     <u>Prima Facie Case</u>

The parties do not dispute the first two elements of Plaintiff's *prima facie* case.  Plaintiff's African-American staff and the disabled residents of the Birch Home are protected classes under the FHA and Plaintiff's residents were enjoying their dwelling at all relevant times.  Plaintiff's

staff also aided the residents in carrying out their daily living activities in the Birch Home, which is protected conduct under Section 3617.  However, the parties dispute whether: (i) Defendants coerced, threatened, intimidated or interfered with Plaintiff's enjoyment of the Birch Home; and (ii) Defendants' videotaping, photographing, and reports to municipal authorities were motivated by their animus against Plaintiff's African-American staff and disabled residents.

"[T]o bring a claim within § 3617, a plaintiff must allege conduct on the part of a defendant[,] which in some way or other implicates the concerns expressed by Congress in the FHA.  If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them." *Weisz*, 914 F. Supp. at 1054; *See also*, *Egan v. Schmock*, 93 F. Supp.2d 1090, 1093 (N.D. CA 2000) (finding that Congress did not intend Section 3617 to cover any discriminatory conduct that interferes with a person's enjoyment of his or her home, otherwise "any dispute between neighbors [] could result in a lawsuit in federal court under the FHA.").

Some courts, primarily in the Northern District of Illinois, have limited the application of Section 3617 to extreme or violent conduct.  *See*, *Whisby-Myers v. Kiekenapp*, 293 F. Supp.2d 845, 852 (N.D. IL 2003) (allegations of racial epithets and detonation of explosive device stated Section 3617 claim); *Johnson v. Smith*, 810 F. Supp. 235, 238-39 (N.D. IL 1992) (allegations of cross burning on plaintiffs' lawn and breaking of plaintiffs' windows stated Section 3617 claim); *Waheed v. Kalafut*, 1988 WL 9092, at *1 (N.D. IL Feb. 2, 1988) (allegations that defendant firebombed house, screamed racial epithets, and threw beer bottles and rocks stated Section 3617 claim).  However, allegations of force or violence are not necessary to prove a Section 3617 violation.  *See*, *Reyes v. Fairfield Props.*, 661 F. Supp.2d 249, 267 n.10 (E.D.N.Y. 2009) (citing *Marks*, 2002 WL 764473, at *11); *See also*, *Taal v. Zwirner*, 2004 WL 556709, at *9 (D. NH Mar. 22, 2004) ("not [] only shockingly severe and violent conduct will meet the threshold requirements

of a § 3617 claim . . . a moderate level of intentional and persistent nuisance behavior, motivated by [] animus, and directed at a victim over a sufficient period of time [] might prove so disruptive and coercive as to warrant relief under § 3617.") (citing *Ohana*, 996 F. Supp. at 241-42).

In *Ohana*, a case from this district, the plaintiffs asserted a Section 3617 claim against their neighbors alleging their neighbors interfered with their peaceful enjoyment of their home by making racial slurs and epithets, banging on their apartment walls, and threatening physical violence. 996 F. Supp. at 239. The court denied the defendants' motion to dismiss, finding that plaintiffs had stated a Section 3617 claim. *Id.* at 243. In *Weiss*, a case from the Southern District of New York, the plaintiff asserted a Section 3617 claim on behalf of a family against their neighbor. 914 F. Supp. at 1053. The plaintiff alleged that the neighbor interfered with the family's use of their home by making complaints to municipal authorities about noise, children trespassing, and the family's placement of a basketball pole and hoop on her property. *Id.* at 1052. Unlike in *Ohana*, the *Weiss* court granted defendant's motion to dismiss and described the action as "nothing more than a series of skirmishes in an unfortunate war between neighbors." *Id.* 1054-55. The court found that the plaintiff had failed to show that neighbor's conduct was motivated by religious animus. *Id.*

Plaintiff alleges that Defendants interfered with its enjoyment and use of the Birch Home by videotaping and photographing its staff and residents and filing municipal reports. Compl. ¶¶ 48, 70; Opp'n at 16-17. Plaintiff claims Defendants' conduct was threatening and intimidating and motivated by their animus towards Plaintiff's African-American staff and disabled residents. Compl. ¶ 7; Opp'n at 11, 16-17. It is undisputed that Defendants want the Birch Home closed. Plf.'s 56.1 ¶ 44. Notably, Plaintiff does not claim that Defendants engaged in any violent or forceful conduct to accomplish this goal. However, Defendants' daily videotaping and

16

photographing of the Birch Home over a nearly five-year period, which has amounted to thousands of videotapes and photographs, may be considered an "intentional and persistent nuisance behavior" that is "disruptive and coercive[.]" *Taal*, 2004 WL 556709 at \*9.  Plaintiff's staff and residents were "stress[ed]" by Defendants' constant surveillance.  Compl. ¶ 62; Cheryl Aff. ¶ 14.

In *Bryant v. Polston*, the plaintiffs asserted a Section 3617 claim against their neighbors, alleging their neighbors intimidated, coerced and harassed them because of their association with African-American individuals.  2000 WL 1670938, at \*1 (S.D. IN Nov. 2, 2000).  The plaintiffs claimed the neighbors set up and directed cameras to surveil the plaintiffs' home, filed false reports with the sheriff, made discriminatory remarks and gestures of violence.  *Id.* at 3 n.1.  The court found that the plaintiffs' allegations fell squarely "within the ambit of Section 3617" and denied the defendants' motion to dismiss.  *Id.* at 3-4.  Here, although Plaintiff did not allege that Defendants threatened violence or made false municipal reports, a reasonable jury similarly could find here that Defendants' video surveillance interfered with Plaintiff's use of the Birch Home.

Defendants argue that their videotaping was protected under the First Amendment because they were capturing wrongful conduct.  Mot. at 13.  They note that they sent the videos to municipal authorities to seek redress particularly since Plaintiff was unresponsive to their repeated requests to ameliorate their concerns.  *Id.* at 14.  Plaintiff contends that Defendants' videotaping was done to harass the staff and residents and does not amount to protected speech.  Opp'n at 12.

"Section 3617 has been applied somewhat broadly to cover various forms of interference with housing rights protected by the FHA . . . with due regard for competing First Amendment rights."  *Taal*, 2004 WL 556709 at \*8 (citation omitted).  "Threats of violence, coercion, and intimidation directed at individuals . . . do not qualify as advocacy, and may well constitute a violation of § 3617."  *Id.*  Defendants rely upon *Fields v. City of Philadelphia*, 862 F.3d 353 (3d

Cir. 2017) and *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), neither of which is binding on this Court, to support their claim that their videotaping was conduct protected under the First Amendment.   Mot. at 13-14.   Those cases are inapposite and distinguishable from the facts of this case as they recognized a First Amendment right to videotape police officers performing their duties.   *Fields*, 862 F.3d at 359; *Alvarez*, 679 F.3d at 586.   Notably, neither the Supreme Court nor the Second Circuit have recognized a First Amendment right to record police activity.   *See*, *McKenzie v. City of New York*, 2019 WL 3288267, at *7 (S.D.N.Y. July 22, 2019).   Defendants cannot extend an unestablished First Amendment right to record police officers to the instant dispute, which involves neighbors not law enforcement.   Plaintiff also alleged that Defendants' surveillance of its staff and residents was threatening and intimidating. Compl. ¶ 62.   Accordingly, Defendants have failed to establish that their videotaping is protected by the First Amendment.

In support of its claim that Defendants' conduct was motivated by an animus against Plaintiff's African-American staff and disabled residents, Plaintiff relies primarily on the comments made by Jack and **Corinne**.   A reasonable jury could find that Jack's statements to Mr. Kennard that he was a "fucking nigger" and to Ms. Findlay that "you niggers don't learn[,]" demonstrate his animus against Plaintiff's African-American staff.[2]   However, the incident in which Jack sprayed Mr. Agiamoh with a hose is not evidence of animus.   Instead, it merely is rude or inappropriate conduct.

A reasonable jury also could also find that **Corinne**'s statements reveal an animus towards Plaintiff's African-American staff and disabled residents.   **Corinne** made numerous comments that

---

[2]  Defendants argue that Jack's statement to Mr. Kennard does not amount to "severe" or "pervasive" harassment. Mot. at 6, 11-12, 15.  The Court rejects this erroneous and improper argument, as Plaintiff did not assert a hostile housing environment claim under Section 3617.  *See*, Compl. at 11-12.

could be interpreted as racially charged code words.  *See*, *Mhany Mgmt. v. Cnty. of Nassau*, 819 F.3d 581, 609 (2d Cir. 2016) ("[R]acially charged code words may provide evidence of discriminatory intent by sending a clear message and carrying the distinct tone of racial motivations and implications.") (internal quotation marks and citation omitted).  These included that Plaintiff's African-American staff were not "civilized," they had "attitudes," they had not "blended" into the neighborhood, and they were "destroying [the Defendants'] neighborhood[.]"  Plf.'s 56.1 ¶¶ 22, 25-26, 30.  In Defendants' video log, they also refer to a staff member as a "thug" and Corinne voiced concerns to Plaintiff about "thuggy" behavior.  *Id.* ¶¶ 31-32.

Corinne additionally communicated to Plaintiff her unhappiness with the disabled residents.  Her complaints that "it is as though we have been moved into a psych ward of a hospital," "[w]e feel like we live next to an asylum" and "we shouldn't have to hear loud institutional sounds in our residential neighborhood[,]" all can be interpreted as derogatory statements concerning the disabled residents.  *Id.* ¶¶ 23-24, 29.  Notably, Jack and Corinne made these statements throughout the period that they were taping and photographing Plaintiff's staff and residents and, as stated, their goal is to shut down the Birch Home.  Plf.'s 56.1 ¶ 44.  Considering these facts in the light most favorable to Plaintiff, Plaintiff has established a *prima facie* case that Defendants violated Section 3617.

### (2)   Legitimate Non-Discriminatory Reason

Under the *McDonnell Douglas* framework, the burden now shifts to Defendants to articulate a legitimate, non-discriminatory reason for their challenged conduct.  *See*, *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 n. 11 (2d Cir. 2015).  Defendants meet their "minimal burden" of production as long as their factual assertions, if true, support the non-discriminatory reason.  *Mhany Mgmt.*, 819 F.3d at 613; *Haber v. ASN 50th St. LLC*, 847 F. Supp.2d 578, 587

(S.D.N.Y. 2012) (internal citation and quotation marks omitted); *See also*, *Wentworth v. Hedson*, 493 F. Supp.2d 559, 569 (E.D.N.Y. 2007) ("defendant 'is required to articulate-but not prove-a legitimate, nondiscriminatory reason'") (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988)).

Defendants claim that they videotaped and photographed Plaintiff's staff and residents and submitted complaints to municipal authorities solely to document wrongful conduct in the Birch Home.  Mot. at 13-14; Rep. at 11.  This included Plaintiff's staff abusing and not supervising the residents, noise complaints, littering, idling vehicles in the street, and cars blocking the Defendants' driveway.  *See*, Corinne Aff. at ¶¶ 7-8; Exhibits S and T to Affidavit of Christopher Murray ("Murray Aff."), Dkt. Entry Nos. 21-22, 21-23; Exhibits G and S to Schonfeld Aff. Defendants reported these issues to Plaintiff and sought a resolution, but there was no improvement.  Plf.'s Resp. to Defs.' 56.1 ¶¶ 9-10.  These neutral non-discriminatory reasons satisfy Defendants' minimal burden of production.  *See*, *Favourite v. 55 Halley St., Inc.*, 381 F. Supp.3d 266, 280 (S.D.N.Y. 2019) (defendant presented legitimate non-discriminatory reasons for sending notice of termination to plaintiff, where plaintiff allegedly made unreasonable and excessive noise that disturbed other residents);  *Mohamed v. McLaurin*, 390 F. Supp.3d 520, 555 (D. VT 2019) (plaintiff's misuse of common areas and repeated parking violations were legitimate, non-discriminatory reasons for the defendant not to renew her lease).

### (3)   Pretext

The burden now shifts to Plaintiff to demonstrate by a preponderance of the evidence that Defendants' proffered reasons for their actions were not legitimate and non-discriminatory but rather were a pretext for discrimination.  *See*, *Texas Dept. of Cmty. Affairs*, 450 U.S. at 253. Plaintiff may demonstrate that Defendants' explanation is a pretext for discrimination "directly by

20

persuading the court that a discriminatory reason more likely motivated [Defendants] or indirectly by showing that [Defendants'] proffered explanation is unworthy of credence." *Id.* at 256 (citation omitted). Plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by [Defendants] were false, and that more likely than not [discrimination] was the real reason for the [action]." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks and citations omitted). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis omitted).

Here, Plaintiff claims that only one of the reasons Defendants offered for their videotaping is pretextual, specifically that Plaintiff's staff was abusing the disabled residents. Opp'n at 17. Plaintiff argues that the entries in Defendants' video log "do[] not prove that point" and cites to log entries that bear no relation to that subject, including descriptions of noise complaints about the staff and residents. *Id.* at 9-10. Plaintiff also asserts that Defendants did not present evidence that they turned over all the videotapes and photographs to municipal authorities for the purpose of preventing abuse of the residents. *Id.* at 14. Plaintiff submits that Defendants do not care about the disabled residents and simply "want them gone." *Id.* at 17.

Plaintiff misunderstands its burden at the pretext stage. It is not to demonstrate that Defendants have not proven adequately their legitimate, non-discriminatory reasons. Rather, Plaintiff must present evidence that Defendants' articulated reasons are false and their conduct motivated by discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 515. Plaintiff has not met this burden with respect to any of the reasons proffered by Defendants.

Plaintiff has failed to demonstrate that Defendants' complaints about resident abuse were

false and their videotaping was motivated by animus for the disabled residents.  Plaintiff's bare and conclusory assertion that Defendants "want [the disabled residents] gone" is insufficient.  *See*, *Roffman v. Knickerbocker Plaza Assocs.*, 2008 WL 919613, at *15 (S.D.N.Y. Mar. 31, 2008) ("Other than [] conclusory allegations, plaintiff has failed to come forward with evidence that the stated reasons for defendants' actions were a pretext for discrimination . . . no reasonable jury could find that a substantial or motivating factor for defendants' actions was discrimination.").

Furthermore, Plaintiff failed to address the numerous other reasons that Defendants proffered for their videotaping, photographing and municipal reports.  These included staff failing to supervise the residents, noise, littering, idling vehicles in the street, and cars blocking Defendants' driveway.  Mot. at 7-9; Rep. at 5, 12-13.  While Plaintiff characterized these issues as "trivial," it did not present evidence that Defendants' complaints were false and their conduct was motivated by animus for Plaintiff's African-American staff.  Opp'n at 4, 10, 14, 17.

Under these circumstances, no reasonable jury could find that Defendants' explanation for their conduct was a pretext for discrimination.  "Where, as here, [Plaintiff] 'has failed to show that there is evidence that would permit a rational factfinder to infer that the [Defendants'] proffered rationale is pretext, summary judgment dismissing the claim is appropriate[.]'" *Byrd v. KTB Capital LLC*, 2019 WL 652529, at *7 (W.D.N.Y. Feb. 15, 2019) (quoting *Patterson*, 375 F.3d at 221 (citation omitted)).  Accordingly, Plaintiff's Section 3617 claim is dismissed.

## II.   <u>New York City Human Rights Law</u>

As discussed above, Plaintiff failed to establish that NYCHRL Section 8-107 protects an individual's right to enjoy his premises free from discrimination.  In addition, Plaintiff did not allege that Defendants threatened to harm Plaintiff's staff or residents, and threats are required to state a claim under Section 8-107(19).  *See*, *Garcia*, 2018 WL 3918180, at *5.  Accordingly,

Plaintiff's NYCHRL claim is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted and this action is dismissed in its entirety with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
        June 7, 2021

_____
            /s/
        DORA L. IRIZARRY
        United States District Judge